KAHN v. WEILL.

*(Circuit Court, S. D. California. May 19, 1890.)*

MORTGAGES—DEED ABSOLUTE IN FORM—EVIDENCE.
    In a suit to declare a deed absolute on its face a mortgage, and to redeem therefrom, it appeared that O., who was complainant's mother-in-law, was indebted to defendant and to complainant; that she executed to defendant an absolute deed to all her land, which was not at the time worth more than the debt, and received from him all evidences of debt. This deed complainant claimed to have been intended as a mortgage, under an agreement by which he was to have the right to redeem the land thereby conveyed on his subsequent payment of all the indebtedness. O. testified that the deed was intended as an absolute conveyance, and letters from her to defendant and to complainant tended to show that this was the understanding. There were letters from complainant to defendant and to O., running through several years, during which he made no claim that the deed was a mortgage. His testimony was contradictory and improbable. Defendant, and other members of his firm, testified that the deed was absolute. *Held,* that the deed was an absolute conveyance.

In Equity.
*Jarrett T. Richards, George Pearce,* and *Rodgers & Munday,* for complainant.
*Stanly, Stoney & Hayes,* for defendant.

Ross, J. This is a suit in equity in which the complainant, by his bill, seeks to obtain a decree that a certain deed, of date February 24, 1881, absolute in form, and executed by one Augustias de la Guera de Ord and complainant, and purporting to convey to the defendant five certain parcels of land situated in the county of Santa Barbara, and referred to, for convenience of reference, as the "State-Street Lot," the "Cold-Springs Tract," the "Ord Garden," the "Montecito Tract," and the "Todos Santos Rancho Property," consisting of an undivided interest in the Todos Santos rancho, was in fact a mortgage, and that the defendant be permitted to redeem all of the said property. In respect to the alleged rights of the complainant, no distinction is made in the bill, which is sworn to by complainant, between the different parcels of land. Precisely the same rights are therein asserted to each. It is, among other things, in substance, alleged that, on the 24th of June, 1876, Augustias de la Guera de Ord was the owner in fee and in possession of the said five parcels of land, and that there was then existing thereon a mortgage executed by her to the defendant, as trustee for the firm of Lazard Freres, to secure an indebtedness from her to that firm, then amounting to $11,000; that on the day mentioned Mrs. Ord paid $4,984.65 of the said indebtedness, and the Todos Santos rancho was thereupon released from the mortgage; that Mrs. Ord was at the same time indebted to the complainant, who was her son-in-law, in a large amount of money which she was desirous of paying, and he of receiving, but, being unable to do so without further incumbering her said property, and being also desirous of aiding and advancing complainant in business, on the 30th day of May, 1877, she made and delivered to complainant this power of attorney:

"Whereas, I, Augustias de la Guera de Ord, am indebted to Moise Kahn in a certain sum of money, and whereas I am desirous that said Kahn have the management, control, and disposition of my hereinafter mentioned property, for the purpose of satisfying the above debt due by me to him, now I, Augustias de la Guera de Ord. in consideration of the above, and that said M. Kahn do accept the trust, do hereby constitute the said M. Kahn my true and lawful attorney for me, and in my name, place. and stead, to manage and control, collect the rents, issues, and profits thereof, by suit or otherwise, and receive the same, mortgage, borrow money, bond, lease, sell, or in any way dispose of all or any part of the following described premises or any interest therein, as to him may seem best, to-wit: All my right, title, and interest in and to all the certain tract of land or rancho situated in the county of Santa Barbara, state of California, called and known as the ' Todos Santos y San Antonio Rancho,' confirmed and patented by the government of the United States to the widow, heirs, and executors of William E. B. Hartwell, deceased, by decree of confirmation and letters patent dated November 20th, 1876, and recorded in the office of the county recorder of Santa Barbara county, in Book A of Patents, page 305 and 315 inclusive, which letters patent are made part hereof for purposes of description; and in my name and stead, for the above purposes, to make, execute in writing, and deliver any and all mortgages, notes, releases, and all other necessary instruments and documents, and to collect, sue for, and receive all sums of money due from any one from the management and disposition of said property.

"Witness my hand and seal, this 30th day of May, one thousand eight hundred and seventy-seven.

"AUGUSTIAS DE LA G. DE ORD.   [Seal.]"

The bill alleges that the complainant accepted the power, and undertook the service; that he called upon the defendant, who was at the time a member of the firm of Lazard Freres, which firm was then engaged in the business of banking and loaning money in the city of San Francisco, and with the members of which complainant then was and had long been on intimate friendly and social relations; that defendant was willing to make the desired loan upon the execution by Mrs. Ord of a deed for the Todos Santos rancho property as security for such loan, which defendant preferred, and advised complainant to procure, and which complainant did procure to be made, and upon the execution of complainant's note as "further security;" that the loan was accordingly made, and secured by the deed from Mrs. Ord and the note of complainant, and that, by the direction of Mrs. Ord, defendant, who, throughout all of the transactions, acted for and in behalf of Lazard Freres, on the 6th of August, 1877, executed to complainant in writing this defeasance:

"I hold the promissory note of Mrs. Augustias de la G. de Ord, of Santa Barbara, state of California, dated the 16th day of March, A. D. 1876, for $11,000, on which there is due me, principal and interest, $6,240 92-100.   I also hold the note of M. Kahn, for $5,000, dated August 6th, 1877.   And the said Ord having conveyed to me, by deed dated July 9th, 1877, all her interest in the tract of land situated in the county of Santa Barbara, and known as the "Rancho Todos Santos y San Antonio," which deed is upon its face for the consideration of $5,000, and is absolute in form, now, therefore, this is to certify and make known that said deed, though absolute in its terms, is, in point of fact, given to secure, *first*, the payment of the said note of M. Kahn for $5,000, with interest that may accrue due thereon; and, *second*, to further secure the principal and interest due me on said note of Mrs. Ord,

hereinbefore first above mentioned; but I agree not to subject the lands of the said Rancho Todos Santo y San Antonio to the payment of the said note of Mrs. Ord until I have first exhausted the securities I already hold therefor, and then only for any deficiency that may exist after my present securities are exhausted. And I agree that, upon the payment to me by the said Kahn of his said note, with interest, as in said note provided, and also upon the payment of the said note of Mrs. Ord, with interest, and the further payment to me of all sums of money by me for any purpose expended for the protection of said land, or for further or more effectually securing to me the interest in said lands mentioned in said deed, and all expenses and charges that I may incur or make in looking after and protecting or improving said property, and costs and attorneys' charges in enforcing the payment of said money secured by said deed, I will convey the interests so conveyed to me by said deed of the 9th day of July, 1877, to M. Kahn, pursuant to the written request of said Ord, as expressed in her letter to me of July 9th, 1877.

"Witness my hand and seal, this 14th day of November, A. D. 1877.

"A. WEILL.    [Seal.]

"N. B.    Before execution, the words 'of even date herewith,' in line 8, on page 1, were erased, and the words 'dated Aug. 6th, 1877,' interlined."

The bill then alleges that, about the month of January, 1881, Mrs. Ord being still indebted to Lazard Freres, and being still unable to pay complainant the amount due him, and her indebtedness to Lazard Freres being then about to become barred by the statute of limitations of California, the said Lazard Freres moved and induced complainant to and he did procure Mrs. Ord to sell all of her said property, together with her equity of redemption therein, to complainant, with the understanding and agreement that complainant should and would assume the payment of the entire indebtedness of Mrs. Ord to Lazard Freres, and join her in the conveyance and transfer of the whole of the said real property, including the said Todos Santos rancho property, all to be held by the said Lazard Freres as security for the payment of said indebtedness of complainant to them, and that this was consented and agreed to by complainant and Mrs. Ord, as well as Lazard Freres; and that the said purchase from Mrs. Ord by complainant was consummated on the 24th of February, 1881, and her said indebtedness assumed by complainant, and that complainant joined Mrs. Ord in the transfer of all of said property to Alexander Weill, as and for security for the payment of the said indebtedness of both complainant and Mrs. Ord, amounting at that time to about $18,870, with interest, and not otherwise.    The bill further alleges that the property was at that time reasonably worth $30,000, and at the time of the bringing of this suit was worth $100,000; that at the time of the execution of the deed of date February 24, 1881, it was covenanted and agreed between complainant and Lazard Freres that complainant be accepted as sole debtor and obligor for the pre-existing indebtedness of Mrs. Ord and himself to Lazard Freres, and that said deed should be held by them through their said trustee, Alexander Weill, as a mortgage to secure the payment, within one year from the date thereof, of the indebtedness so assumed and owing by complainant to Lazard Freres, and any further advances made by that firm to complainant on the faith thereof.    The bill further alleges that, on or about

October 29, 1886, Mrs. Ord, for a valuable consideration, and in performance of her legal obligations, and for the purpose of clothing complainant with habiliment of title as the true owner of the premises, made, executed, and delivered to complainant a certain deed, wherein and whereby she conveyed to him all her right, title, and interest in and to all of said parcels of land. The bill further alleges that, since the making of the deed of date February 24, 1881, complainant has been in possession of all of the property, through himself and his tenants, and it alleges his willingness and readiness to pay the amount of the alleged indebtedness to Lazard Freres, and asks a decree permitting him to redeem the property.

Besides answering the bill the defendant filed a cross-bill, in which it is alleged that he is, and since the 4th day of March, 1881, has been, the owner in fee, and entitled to the possession, of all of the property in question; that he derived title thereto through Augustias de la Guera de Ord, who was, on said 4th day of March, 1881, seised in fee, and in the possession, of each of said parcels of land, except that referred to as the "Todos Santos Rancho Property," the title to which latter property, it is alleged, was then in cross-complainant in trust for purposes afterwards stated; that on the 16th of May, 1876, Mrs. Ord was seised in fee of each of said parcels of land, and, being so seised, did on that day, for a valuable consideration, execute to cross-complainant her promissory note for $11,000, and as security therefor executed at the same time to cross-complainant a mortgage upon all of said property; that thereafter, and on or about the —— day of July, 1877, cross-complainant, at the request of Mrs. Ord, released from the operation of said mortgage the Todos Santos property; that thereafter, and on the 9th day of July, 1877, Mrs. Ord, being still seised in fee of the Todos Santos property, executed to cross-complainant a deed purporting to convey and conveying to cross-complainant in fee-simple the said Todos Santos property, which deed was made and accepted in trust, first, to secure the payment by Mrs. Ord of the amount then due upon her aforesaid note and mortgage, and the payment by the defendant, Moise Kahn, to cross-complainant of the sum of $5,000, with interest, to be thereafter advanced and loaned to him by cross-complainant; and, after such payments, in trust to convey the said Todos Santos property to defendant, Kahn, in pursuance of a written request and written instructions signed by Mrs. Ord, and addressed to cross-complainant, and delivered to him contemporaneously with the delivery of the deed of July, 1877, and as part of the same transaction, which request and instructions were in the words and figures following, to-wit:

"SANTA BARBARA, July 9, 1877.

"*Alexander Weill, Esq.*—DEAR SIR: My deed of conveyance of the date of July, A. D. 1877, conveying to you my undivided interest in the Rancho Todos Santos y San Antonio, will be handed to you by my son-in-law, Mr. M. Kahn, and to him you will please pay the consideration expressed in said deed. You will also, upon the repayment to you of your money and interest, convey by proper deed the property described in my deed to you to Mr. Kahn, and for Mr. Kahn's security give him such writings as shall evidence his right to such

conveyance upon repayment to you being made, and be mutually satisfactory to you and him.  I am owing Mr. Kahn, and he is to receive the property after you are paid.

"Yours, very truly,                                    A. DE ORD."

The cross-bill further alleges that subsequently, to-wit, on the 6th of August, 1877, the defendant thereto, Moise Kahn, executed to cross-complainant his promissory note for the sum named in said deed as the consideration thereof, namely, $5,000, and interest, and that thereupon and thereafter cross-complainant, in pursuance of the aforesaid instructions of Mrs. Ord, advanced to Kahn the said sum of $5,000; that afterwards, to-wit, November 14, 1877, in pursuance of the instructions contained in said letter of July 9, 1877, cross-complainant executed to said Moise Kahn the defeasance referred to in the bill and hereinbefore set out.   The cross-bill further alleges that, on said 14th of November, 1877, Mrs. Ord and Moise Kahn were indebted to cross-complainant in the aggregate sum of $11,000, evidenced by their promissory notes mentioned in said defeasance; that thereafter, to-wit, on the 24th day of February, 1881, the said notes of Mrs. Ord and Moise Kahn were unpaid, and they were still indebted to cross-complainant in a large sum of money secured by the aforesaid mortgage and deed, to-wit, in a sum exceeding $18,000, and the said indebtedness, and cross-complainant's right of action therefor, were about to become barred by the statute of limitations of California; that cross-complainant was therefore about to commence an action against the said Mrs. Ord and the said Moise Kahn to foreclose the said liens, and so informed them; that the value of the property was not then equal to the amount of the liens; that thereupon Mrs. Ord, acting under the advice and with the consent of Kahn, proposed to cross-complainant that, instead of foreclosing the said mortgage and liens, cross-complainant should pay to Mrs. Ord the probable costs of such foreclosure, and should surrender the said notes and evidences of indebtedness of Mrs. Ord and of Moise Kahn to be canceled, and that, in consideration thereof, and in full discharge of said indebtedness, she would execute to cross-complainant a deed conveying to and vesting in him a perfect title to each of said parcels of land free from any and all equities of the said Mrs. Ord and of Kahn; that said proposition was accepted by cross-complainant, and, on the 24th of February, 1881, a deed purporting to convey each of said parcels of land to cross-complainant in fee-simple absolute was prepared by him, in which Mrs. Ord and Moise Kahn were named as grantors, and cross-complainant as grantee, which was sent to defendant, Kahn, at Petaluma, in Sonoma county, to be executed and acknowledged by him, and that he was then and there informed by cross-complainant that he was made a grantor in said deed, because the aforesaid instrument given to him by cross-complainant on the 14th of November, 1877, had provided for a conveyance to him of a portion of the property upon payment of the said indebtedness; that, after being so informed, the defendant, Kahn, did, on the said 24th day of February, 1881, execute and acknowledge the said deed before a notary public in and for Sonoma county, and did then return the same to cross-

complainant to be executed by Mrs. Ord; that cross-complainant thereupon forwarded the said deed to Mrs. Ord, who was then a resident of Santa Barbara county, to be executed by her; that on the 4th day of March, 1881, Mrs. Ord, in consideration of the payment to her by cross-complainant of the sum of $200, and of the release and discharge by cross-complainant of all of the aforesaid indebtedness of herself and of Moise Kahn, did sign, acknowledge, and deliver to cross-complainant the said deed, which was thereafter and on the same day filed for record and recorded in the office of the recorder of Santa Barbara county; that, upon receipt of said deed from Mrs. Ord, cross-complainant paid to her the sum of $200, and surrendered to her her aforesaid promissory note; and thereafter, to-wit, on the 9th of March, 1881, cross-complainant did cancel and surrender to defendant, Kahn, all notes and evidences of his said indebtedness, and did discharge him from all obligations to pay the same. The cross-bill further alleges that, upon receiving said deed, cross-complainant did enter thereunder upon and take possession of each of said parcels of land, except the Todos Santos rancho property, and did hold and retain possession thereof, claiming title thereto under said deed, until some time in the month of October, 1886; that at the time of the execution of the deed of date February 24, 1881, the title of Mrs. Ord to the Todos Santos rancho property was held subject to a life-estate, then vested in one Teresa Hartnell, who died thereafter, and that upon her death cross-complainant entered upon and took possession thereof under the deed of date February 24, 1881, and held such possession until some time in October, 1886. The cross-bill further alleges that, on the 8th of October, 1886, and while cross-complainant was so in possession of each of said parcels of land, except the Todos Santos property, and claiming and having title to all of said parcels under said deed of date February 24, 1881, the defendant, Kahn, induced Mrs. Ord to execut, acknowledge, and deliver to him a deed, bearing date on that day, purporting to remise, release, and quitclaim unto him, the defendant, Kahno his heirs and assigns, the right, title, and interest of the grantor in and, to the Todos Santos rancho property, which deed the defendant, Kahn, filed for record on the 12th of November, 1886, in the office of the recorder of Santa Barbara county; that thereafter, to-wit, on the 29th of October, 1886, and while cross-complainant was still in possession of each of said parcels of land, except the Todos Santos property, and claiming and having title to all of said parcels under said deed of date February 24, 1881, the defendant, Kahn, induced Mrs. Ord to execute, acknowledge, and deliver to him a deed, bearing date on that day, purporting to remise, release, and quitclaim to him, the defendant, Kahn, his heirs and assigns, the right, title, and interest of the grantor in and to each of said parcels of land. The cross-bill further alleges that, ever since the execution of the deeds of October 8 and October 29, 1886, the defendant, Kahn, has claimed and still claims to have acquired thereunder from Mrs. Ord, and to have, the legal and equitable title to each of said parcels of land, and denies the title and right of possession thereto of cross-complainant. It further alleges that the deeds of October 8 and October 29, 1886, were made to Kahn without consideration; that at

the time of their execution the grantor therein did not have or claim to have any right, title, or interest in or to either of said parcels of land, and that the defendant, Kahn, in accepting the same, well knew that the grantor therein had already conveyed her title thereto to cross-complainant, and that she no longer claimed to have any right to or interest therein, and that said deeds did not, in fact, operate to convey to or vest in the defendant, Kahn, any title to or interest in either of said parcels. The cross-bill further alleges that, on the 28th of January, 1887, the defendant, Kahn, caused to be published in a newspaper published and largely circulated and read in Santa Barbara county, a notice stating, among other things, himself to be the owner of all of said parcels of land, and that cross-complainant did not acquire the ownership or right of possession of any of said land by the aforesaid deed of date February 24, 1881. The cross-bill also contains allegations concerning the taking of possession of the premises in controversy subsequent to the month of October, 1886, by parties entering under the defendant, Kahn, and in respect to the bringing of actions at law by cross-complainant to recover possession from such parties. It also makes reference to the allegations contained in the bill respecting the agreement under which the deed of date February 24, 1881, was executed, and denies each and every of its allegations respecting that matter, as also the averments of the bill in regard to the deed made by Mrs. Ord to the defendant, Kahn, of date October 29, 1886; and, to the contrary, alleges that the deed of date February 24, 1881, was not intended as a mortgage or other security, but was in fact, what it purported to be, a deed absolute, conveying to cross-complainant in fee-simple all of the said parcels of land, and was so intended by all of the parties thereto; that the claims of the defendant, Kahn, in respect to the deed of date February 24, 1881, as well as to the deeds of October 8 and October 29, 1886, under which he also asserts title to the premises, constitute a cloud upon the cross-complainant's title thereto, and have and do impair the market value of said property, and embarrasses and prevents cross-complainant's enjoyment thereof. The prayer of the cross-bill is for a decree adjudging the cross-complainant to be seised in fee and entitled to the possession of each of said parcels of land; that the defendant, Kahn, has no title, estate, or interest at law or in equity in either of them; that the deed of date February 24, 1881, was intended by all of the parties thereto to be, and that it was in fact, an absolute conveyance of the premises described therein to cross-complainant, and was not intended to be, nor was it in fact, a mortgage or deed of trust; that neither of the deeds of October 8, 1886, and October 29, 1886, conveyed any right, title, or interest in or to the said parcels of land or either of them; that the deeds of October 8 and October 29, 1886, create a cloud upon the title of the cross-complainant, and that the defendant, Kahn, be required to surrender the same for cancellation, and that he be enjoined from hereafter claiming or asserting any right or title thereunder.

I shall not undertake to refer in detail to all of the evidence in the case, for the record is too voluminous to admit of such reference without

extending this opinion beyond all reasonable limits; but I will state as briefly as I can the reasons for the conclusion to which I have come, after a careful consideration of the case, which is the same conclusion to which I was inclined at the trial. If the deed of date February 24, 1881, was in fact, what it purported to be, a deed absolute, then, manifestly, those of October 8, 1886, and October 29, 1886, from Mrs. Ord to Moise Kahn conveyed nothing, and they become unimportant, except in so far as they, together with the circumstances under which they were executed, tend to throw light upon the true nature of the deed of date February 24, 1881, and except in so far as they may cast a cloud upon the title set up in the cross-bill. As has been already said, the complainant, by his sworn bill, asserts precisely the same rights to each of the five parcels of land. Yet it is not pretended that the evidence shows that, prior to the execution of the deed of date February 24, 1881, Mrs. Ord ever executed any instrument conveying to or vesting in him any interest in either of the parcels except the Todos Santos rancho, and, as to that, the only writings under which he claims to have acquired an interest are the power of attorney executed to him on the 30th day of May, 1877, and the letter from Mrs. Ord to Alexander Weill, of date July 9, 1877. In respect to the first of these instruments, the complainant, in his testimony given at San Francisco, after referring to Mrs. Ord's indebtedness to him, and his recapitulation of it to her on May 28, 1877, aggregating, as he claims, $4,528.33, and her promise to pay it, said:

"I said, [to Mrs. Ord:] 'You have been spending your money, and in a little while you will be without anything. If you go along as you do, you will eat up all there is, and you will have nothing to pay me. Now, I promise this to you: Give me that ranch [meaning the Todos Santos rancho property] in payment of the money. I will not let you starve, and I want to get into business. I will see you do not want so long as I have anything. You give me that rancho, and so pay me all you owe me.' *Question,* (to complainant.) What did she say? *Answer.* Make out the documents. *Q.* Did you do so? *A.* I did. *Q.* What document did you make out? *A.* Power of attorney."

—That is to say, the power of attorney which has been hereinbefore set out, and which was thereupon introduced in evidence. Passing the question of the competency of this evidence of the complainant as to a parol sale by Mrs. Ord of her interest in the Todos Santos rancho, and of his claim that the power of attorney was made in furtherance of such parol sale, it is to be observed that the testimony itself is not only directly opposed to that of Mrs. Ord upon the same subject, but it is wholly inconsistent with the recitals of the power itself, by which, as has been seen, complainant was constituted the attorney in fact of Mrs. Ord, for her, and in her name, place, and stead, to manage and control the Todos Santos rancho property, collect the rents, issues, and profits thereof, and to borrow money, mortgage, bond, lease, or in any way dispose of that property as to him should seem best; all, however, for and in the name, place, and stead of Mrs. Ord, and for the purpose expressly declared in the power itself, which was that, for the reason that she was indebted to complainant, she was desirous that he should have the "management, control, and disposition" of the property, to the end, manifestly, that out

of the proceeds the debt might be satisfied. So far from the power evidencing a sale by Mrs. Ord to complainant of the Todos Santos property, it did not vest in complainant any interest therein; in other words, it was not a power coupled with an interest, for it did not purport to vest in complainant any interest in the land itself, which was the subject of the power, but only in such proceeds as might be realized therefrom by the exercise of the power. *Hunt* v. *Rousmanier*, 8 Wheat. 203. Furthermore, according to complainant's own testimony, he never performed a single act under and by virtue of the power of attorney. When asked by his counsel what he did with it after it was delivered to him, he answered:

"I came to San Francisco shortly after that to see Mr. Alexander Weill, and to get some money on that. I explained to him the circumstances, and what I wanted, and presented the power to him; after which he said: 'Better for your own security if Mrs. Ord make a deed of that ranch to me absolutely, accompanied by a letter from her telling me to give you the amount of money that you speak of, and that, upon the payment of that money back to me, with interest, to reconvey the property to you.' I requested Mr. Alexander Weill to have the document and deed.drawn up himself, and give them to me, and I will send them to her. *Question*, (by counsel.) Did he do so? *Answer*. Yes, sir. The next day he had the papers ready, and handed them to me, and I forwarded them by mail. *Q.* What, then, did you do with the power of attorney that you have just offered in evidence here? *A.* I did not do anything; I put it in my pocket."

Mrs. Ord was at this time in Santa Barbara county, where she resided, and was therefore entirely ignorant of the preparation of the deed and letter of July, 1877, which were drawn by the attorney of Weill in San Francisco, at the request of complainant. The deed was an absolute deed in form, from Mrs. Ord to Alexander Weill, for the Todos Santos property, expressing a consideration of $5,000, and was, according to the testimony of complainant just quoted, made to take the place of the power of attorney for the better security of complainant; whereas, according to the sworn averments of the bill, which are admitted by the answer, Weill preferred for his own security to make the loan upon a deed from Mrs. Ord to himself, and required, as further security, the execution of complainant's note for the amount of the loan,—$5,000. The letter has been already set out in full. Like the power of attorney, not only does it fail to support the testimony of complainant that there was a parol sale by Mrs. Ord to him of the Todos Santos property in May, 1877, in liquidation of her indebtedness to him, which he claims then amounted to $4,528.33, but in terms it excludes any such idea. It expressly recites that she then (July 9, 1877) owed him money; and it is nowhere pretended that Mrs. Ord incurred any indebtedness to complainant between the time of the execution of the power of attorney and the preparation of the deed and letter of July, 1877. It directed Weill to pay the consideration expressed in the deed, which was $5,000, and several hundred dollars more than complainant claims that Mrs. Ord then owed him, to complainant, and that, upon the repayment of the sum borrowed, with interest, Weill convey the property to complainant by deed, the rea-

son therefor being stated in these words: "I am owing Mr. Kahn, and he is to receive the property after you are paid;" and for complainant's security Weill was, by the letter, directed to give complainant such writings as should evidence his right to such conveyance. This letter, together with the deed, was sent by complainant to Mrs. Ord at Santa Barbara, who signed and acknowledged the deed, and signed the letter, and returned them to complainant; and upon the delivery of the deed to Weill, and the execution by complainant of his note as further security for the amount, Weill paid complainant, from time to time as he called for it, the consideration mentioned in the deed, namely, $5,000, and subsequently signed and delivered to him the defeasance hereinbefore set out.

Even if complainant had repaid the $5,000 so loaned by Weill, with interest, and had received from him a deed for the Todos Santos property, I consider it perfectly clear that he would have held it, not absolutely, but only as security for such money as Mrs. Ord really owed him. The letter did not pretend to say that after Weill was paid complainant was to receive the property, absolutely, in payment of Mrs. Ord's debt to him; and, if it had, there was no agreement on complainant's part to receive it in such payment. Besides, in the defeasance which Weill executed to complainant, and which he accepted, it is expressly stated that the deed of July 9, 1877, was given to secure, *first,* the $5,000, with interest, expressed as its consideration, and which was, as already said, further secured by complainant's note; and, *second,* the balance due on the $11,000 note executed by Mrs Ord on March 16, 1876, which balance then amounted to $6,240.92, and which was also secured by the mortgage given at the time of the execution of the note, and which was then still existing on all of the property originally embraced in it, except the Todos Santos rancho. If, as complainant contends, the Todos Santos property was to become his, absolutely, upon the repayment of the $5,000 borrowed from Weill in July, 1877, it is difficult to understand why it should be held by Weill as additional security for the balance due by Mrs. Ord on her $11,000 note, of date March 16, 1876. Moreover, Mrs. Ord, in her testimony, explicitly denies that she ever sold or agreed to sell the property to complainant, or that her indebtedness to him was anything like the amount claimed by him, or that the letter to Weill was intended by her to authorize the transfer of the property to complainant, absolutely; and that such was not the fact is further evidenced by a letter to complainant, of date July 12, 1877, from Mrs. Ord's daughter Rebecca, now Mrs. Pechine, who, it appears from the evidence, conducted, on the part of her mother, her correspondence with complainant, in which letter Mrs. Pechine says:

"Regarding that document and letter [meaning the deed and letter of July 9, 1877] that my mother signed, and which you sent from San Francisco, my mother thinks it well for you to ask of Lazard Freres a ' receipt ' of that letter which she signed. Pancho Guttierez came to acknowledge her signature, and read the document [meaning the deed] which you sent, and he said it was a ' *venta absoluta,*' [absolute conveyance.] I know nothing about those documents, and of course I had nothing to say to that. About the receipt of

that letter which mother signed, she says it is well for you to send it to her when obtained, because you might meet with an accident, or supposing you die, etc., it is better for her to have it."

If complainant's theory be accepted, it was no concern of Mrs. Ord what should become of the paper to be given by Weill in acknowledgment of the deed and letter. No other or further instrument or instruments were executed by Mrs. Ord in relation to any of the property in controversy, prior to the deed of date February 24, 1881, which is the deed the complainant asks to have adjudged a mortgage, and from which he seeks to redeem. A number of letters preliminary to the execution of that deed passed between the respective parties, and are in evidence, which leave no doubt as to its true intent and purpose. In January, 1881, the indebtedness to Lazard Freres not having been paid, and being about to become barred by the statute of limitations of California, that firm addressed, on the 6th day of that month, to complainant this letter:

"BANKING HOUSE OF LAZARD FRERES,
"SAN FRANCISCO, January 6th, 1881.

"Moise Kahn, Esq., Petaluma, Cal.—DEAR SIR: The mortgage held by us on the Santa Barbara properties of Mrs. Ord will shortly outlaw. We beg to request that you come into the office on the occasion of your first visit to San Francisco, and arrange for its renewal. Please answer what you intend doing about it.
"Yours, truly,            LAZARD FRERES, per E. J. LE BRETON."

On the 19th of the same month Lazard Freres wrote to Mrs. Ord as follows:

"BANKING HOUSE OF LAZARD FRERES,
"SAN FRANCISCO, January 19,1881.

"Mrs. A. de Ord, Santa Barbara, Cal.—DEAR MADAM: Your mortgage to Alexander Weill will be outlawed by limitation within a few months from this date. Please write to us immediately what you propose to do concerning its payment or renewal.
"Yours, very truly,            LAZARD FRERES, per E. J. LE BRETON."

To which Mrs. Ord replied, by letter addressed to Lazard Freres:

"Your note of 19th inst. was duly received, concerning the mortgage to Alexander Weill. All I can say is that for the present I am unable to pay it, and if you wish for me to renew my note I will willingly do so. Please write to Moise Kahn, Petaluma, to ascertain what hopes he has of raising money for its payment, and oblige,
"Yours, truly,            A. DE ORD."

On the 28th of January, Lazard Freres wrote to complainant as follows:

"BANKING HOUSE OF LAZARD FRERES,
"SAN FRANCISCO, January 28th, 1881.

"Moise Kahn, Esq., Petaluma, Cal.—DEAR SIR: We are in receipt of a letter worded as follows, from Mrs. A. de Ord, Santa Barbara:

"'Your note of 19th inst. was duly received, concerning the mortgage to Alexander Weill. All I can say is that for the present I am unable to pay it, and if you wish for me to renew my note I will willingly do so. Please write

to Moise Kahn, Petaluma, to ascertain what hopes he has of raising money for its payment, and oblige,    Yours, truly, A. DE ORD.'

"We now beg to notify you that, unless Mrs. Ord consents to give us a deed, we shall commence to foreclose on the 1st of February. We expect therefore to hear from you by return mail.

"Yours, truly,    LAZARD FRERES, per E. J. LE BRETON."

To this letter complainant replied on January 31st, as follows:

"PETALUMA, January 31st, 1881.

"*Messrs. Lazard Freres, San Francisco*—GENTS: Yours of the 28th inst. only reached me this evening. On account of the storm which prevailed during the last three days all communication with your city had been stopped, and this evening is the first time we received the mail. Mrs. Ord, I have no doubt, will be very glad to give the deed for the consideration of a few dollars, that is to say, the amount it would cost you to foreclose. I will write to her to this effect this evening, and upon return mail, if you do not hear from [her,] then go ahead and foreclose. I think there is plenty of time ahead. If I am not mistaken, her note will only outlaw by the middle of next month; that is to say, by middle of March. By agreeing to the above request, you will confer a favor to

"Yours, very truly,    MOISE KAHN.

"Say, to hear from her until the 8th or 10th of March."

On the same day complainant wrote to Lazard Freres the letter last quoted, to-wit, January 31, 1881, he wrote to Mrs. Ord, on the back of the letter of January 28th he had received from them, in Spanish, of which the following is a translation:

"VERY DEAR DONA AUGUSTIAS: I have just received this letter which I hasten to forward to you. I do not think that was the way to write, principally with sarcasm respecting me. I have written to Lazard Freres that you would consent to give them a deed to the properties for what it would cost to foreclose the mortgage, to which effect you should write them. I also wrote to them to wait, and I have no doubt they will do it. So that, if you wish to obtain a few hundred dollars, write to them immediately, and do not forget to do so. Caroline with the last storm took cold, and is now in bed. Without doubt nothing serious.

"I remain your son, who loves you,    M. KAHN."

On the 4th of February Mrs. Ord wrote Lazard Freres as follows:

"SANTA BARBARA, February 4th, 1881.

"*Messrs. Lazard Freres, San Francisco*—GENTLEMEN: I received a letter from Mr. Moise Kahn, of Petaluma, with your favor to him of 28th ulto. inclosed. I am at present in reduced circumstances, and therefore unable to redeem the property I mortgaged to A. Weill. I will most willingly give you a perfect deed of said property if you will give me the money that it will cost you to foreclose the mortgage. Thus I will save you considerable trouble, and it will greatly oblige me. I have forgotten to let you know that part of block 217 of the town property, and other small pieces adjoining, are planted in grain and barley, and I request you to let me raise the crop. As soon as you desire, I will be ready to give you the deed. Please correspond with me directly, and not with Mr. M. Kahn in this business, and oblige,

"Yours, truly,    AUGUSTIAS ORD, per REBECCA ORD."

A copy of this letter was also indorsed by Rebecca for Mrs. Ord on the back of the letter of January 28th from Lazard Freres to complain-

ant, and which he forwarded to Mrs. Ord with his letter to her of January 31st indorsed on its back. To this letter from Mrs. Ord, Lazard Freres replied, on February 9th, as follows:

"SAN FRANCISCO, February 9th, 1881.

"*Mrs. Augustias de la G. de Ord, Santa Barbara*—MADAM: We beg leave to own receipt of your favor 4th, 1881, and noted contents. We have handed the papers to our attorneys, and when they are ready we shall forward them to you for signature, with some compensation for cost of foreclosure sale. We shall not be severe about the crop, concerning which you make the request.

"Yours, respectfully,     LAZARD FRERES, per. E. J. LE BRETON."

Accordingly, the San Francisco attorneys of Lazard Freres prepared the deed of February 24, 1881, in which Mrs. Ord and complainant were named as grantors, and Alexander Weill as grantee, and which deed embraced all of the property which Lazard Freres, through Alexander Weill, held as security for the money due from those parties. This deed Lazard Freres first transmitted to complainant, at Petaluma, together with the following letter:

"BANKING HOUSE OF LAZARD FRERES,
"SAN FRANCISCO, February 24th, 1881.

"*To Moise Kahn, Esq., Petaluma*—DEAR SIR: We have caused a deed to be made out from Mrs. Ord and yourself to our Alexander Weill, with the dates in blank. Please sign the same before a notary public, and see that the necessary dates, left in blank, are filled out. The reason we are obliged to make you a party to this deed is that you are mentioned in the defeasance given by Alexander Weill at the time that the interest in the Todos Santos rancho was conveyed by absolute deed to him by Mrs. Ord. Please return the inclosed deed with all possible dispatch, as otherwise we shall be obliged to commence proceedings in foreclosure, our time being exceedingly short.

"Very truly yours,     LAZARD FRERES, per E. J. LE BRETON."

The deed was signed and acknowledged by the complainant, and delivered in person by him to Le Breton, who was, at that time, in the employ Lazard Freres, and who, as will have been observed, conducted the correspondence on their part. Le Breton thereupon consulted with the San Francisco attorneys of the firm in respect to the amount proper to pay Mrs. Ord under their promise to give her what it would cost to foreclose, and, the sum of $200 being fixed upon, that sum, together with the evidences of Mrs. Ord's indebtedness, was sent by Lazard Freres to their attorney in Santa Barbara, who paid the money to Mrs. Ord, and delivered to her the evidences of her indebtedness, whereupon she signed and acknowledged the deed, and delivered it to the attorney of Lazard Freres, who thereupon filed it for record in the county where the property is situated, and notified Lazard Freres of the fact, whereupon they delivered up to complainant the evidences of his indebtedness to the firm. From that day to this, so far as appears, Lazard Freres have never claimed, demanded, or received one cent from Mrs. Ord or complainant, or held any evidence of indebtedness against them, or either of them. It is absurd to suppose that those experienced bankers would have delivered up the evidences of the indebtedness, then amounting to over

$18,000, unless the debts for which they stood were paid; or that, when complainant received the surrender of the $5,000 note he had executed to them, he did not know that it had been paid, together with the note of Mrs. Ord, by the conveyance of the property to Weill for Lazard Freres. At the time of the execution of the deed of date February 24, 1881, Lazard Freres already had a lien upon all of the property to secure the then existing indebtedness. There was therefore no occasion for another mortgage; nor did they want the land, for the evidence is abundant that they had been urging the payment of the amounts due, and that the complainant, acting for Mrs. Ord, had been making every effort to sell the property, but without success; and that he had informed Mrs. Ord that Lazard Freres wanted the money due them, and not the land, is shown by the testimony of Mrs. Pechine, in which she says that long before the making of the deed of date February 24, 1881, complainant had so told her mother, and that they had talked about the matter several times, and she added: "But when we gave the deed of the property to Lazard Freres [referring to the deed of date February 24, 1881] we never talked about it any more. We talked about it long ago when we were in hopes of regaining the property, but when we gave the deed we considered it an absolute deed, and didn't mention it any more." The fact is, as is clearly shown by the evidence, that during the times referred to, and for many years after the making of the deed of February 24, 1881, real estate was greatly depressed in Santa Barbara county, and there was little or no sale for it; and the probability is that, had the liens held by Lazard Freres been foreclosed, the property would not have brought the amount of the judgment. But a consummated judicial sale would have extinguished the liens, and vested the absolute title to the property in the purchaser. The deed in question was made to take the place of such sale, for an additional consideration paid by Lazard Freres to Mrs. Ord, of the estimated cost of foreclosure, at the suggestion of complainant himself, made in his letters to Lazard Freres and Mrs. Ord of January 31, 1881, and freely and gladly accepted by her, as evidenced not only by her letters already quoted, but by her testimony given in this case, as well as by that of her daughter, Mrs. Pechine, who acted for her throughout the correspondence and interviews relating to the matter, both of which witnesses appear to have testified with the utmost candor and truth, and with much intelligence as well, and both of whom say that the deed in question was intended to be just what it purports to be, a deed absolute. And that such was also the clear and distinct understanding of complainant I have no manner of doubt. Any other conclusion would be wholly inconsistent with his own letters, and with the acts of all the parties at the time and subsequently. It is not pretended that Lazard Freres took from complainant any evidence of the indebtedness he now claims to have assumed by the transaction in question, or that they ever afterwards demanded of him payment of one dollar of such indebtedness, or that he ever paid one dollar of it; yet the court is asked to believe that the indebtedness in fact existed by express agreement of the parties, and that, without demanding payment of prin-

cipal or interest, Lazard Freres stupidly went to sleep until the debt had become barred by the statute of limitations. This I cannot accept as true. I am entirely satisfied that the deed in question was by all of the parties to it intended to be exactly what it purported to be, a deed absolute, without any qualifications or conditions. By its execution Mrs. Ord not only discharged all of her indebtedness to Lazard Freres, and received $200 additional, but overpaid complainant by several hundred dollars, according to his estimate of her indebtedness to him, and by several thousand dollars, according to her estimate of it; for his note evidencing the $5,000 he received from Lazard Freres was thereby paid and discharged, and surrendered to him, whereas Mrs. Ord's indebtedness to him, according to his own claim, was but a little over $4,500.

Recurring to the bill which, as has been said, is verified by the oath of complainant, it is seen that it alleges, in substance, that about the month of January, 1881, Mrs. Ord being indebted to Lazard Freres and complainant, and her indebtedness to Lazard Freres being then about to become barred by the statute of limitations of California, the said Lazard Freres moved and induced complainant to and he did procure Mrs. Ord to sell all of her said property, together with her equity of redemption therein, to complainant, with the understanding and agreement that complainant should and would assume the payment of the entire indebtedness of Mrs. Ord to Lazard Freres, and join her in the conveyance and transfer of the whole of the said real property, including the said Todos Santos rancho property, all to be held by the said Lazard Freres as security for the payment of said indebtedness of complainant to them, and that this was consented and agreed to by the complainant and Mrs. Ord, as well as Lazard Freres; and that the said purchase from Mrs. Ord by complainant was consummated on the 24th of February, 1881, and her said indebtedness assumed by complainant, and that complainant joined Mrs. Ord in the transfer of all of said property to Alexander Weill, as and for security for the payment of the said indebtedness of both complainant and Mrs. Ord, amounting at that time to about $18,870, with interest, and not otherwise. It will not be necessary to decide whether the agreement thus alleged would be valid unless evidenced by writing, for it is not supported by proof of any kind. It is not sustained by the testimony of the complainant himself, and is wholly inconsistent with his own letters. It is positively denied by Mrs. Ord, and by David Cahn, at the time a member of the firm of and manager for Lazard Freres, at San Francisco, and the person with whom complainant claims to have carried on the negotiations. So far from Lazard Freres inducing complainant to procure Mrs. Ord to sell the property in question to him upon the understanding that he would assume her indebtedness, and so far from his assuming that indebtedness, as the bill alleges, his own letters show that, when informed by Lazard Freres that the indebtedness must be paid, or they would be compelled to commence suit to foreclose the liens, unless a deed was given, for the reason that the debt was about to become barred by the statute of limitations, it was he who suggested to Lazard Freres that Mrs. Ord would, and who advised her to, give a

deed to them for the property, if they would pay her what it would cost them to foreclose; and in that deed to Lazard Freres complainant joined as a grantor, without objection, when expressly informed in the letter transmitting it to him for execution that he was made a grantor only because he was "mentioned in the defeasance given by Alexander Weill at the time that the interest in the Todos Santos rancho was conveyed by absolute deed to him by Mrs. Ord."

The complainant was examined as a witness, first at Santa Barbara, and then in San Francisco. In his examination in San Francisco he was questioned, among other things, about the letter written by him to Mrs. Ord on the 31st of January, 1881, on the back of that received by him from Lazard Freres, and he was asked by his counsel if he had written a second letter the same day to Mrs. Ord, in relation to the same matter, and he said that he had. Complainant's counsel then called upon the opposite counsel, to whom had been given by Mrs. Pechine and Mrs. Ord all the letters relating to the controversy they had or knew anything about, to produce the second letter spoken of; and the counsel replying that he did not have such a letter, and never before heard of such a one, the complainant proceeded to testify as follows:

"The contents of the letter was that I also said that by this mail I wrote to you, and the sum and substance of the letter is a repetition of the first letter just mentioned, with the following added to it, in Spanish, and it is very clear to my memory: '*Que al fin y al acabo tengo el deracho de redemir estes propriedades que no tengo cuidado.*' I recollect I wrote something else. These gentlemen don't want any property; all they want is their money."

The translation given of the Spanish above quoted is: "At all events I have the right of redemption of those properties; you don't need to fret about it." There are many reasons why I do not believe this testimony of complainant in regard to a "second letter" to Mrs. Ord, on the 31st of January, 1881: (1) If he had secured the right of redemption, and wanted to tell Mrs. Ord at all, it is highly improbable that he would not have mentioned the fact in the letter which he undoubtedly did write, and which she received, and which has been produced in evidence. (2) There would have been no occasion for his repeating in a second letter, on the same day, what he had just written in the first. (3) The testimony given in San Francisco was given in 1887. It is extremely improbable that the witness could remember the precise Spanish words used by him more than six years before, especially when, in his testimony given at Santa Barbara, he testified to but one letter, and did not then recollect that, on the 31st of January, 1881, he had written the advice to Mrs. Ord upon the back of the letter that he had on that day received from Lazard Freres. (4) Mrs. Pechine testifies that she thinks she preserved all of her mother's letters relating to business, and only one of that date was found, and that she never, to her recollection, saw the second letter referred to. To the same effect is the testimony of Mrs. Ord. (5) The letter of Mrs. Ord, of date February 4, 1881, written upon the suggestion of complainant contained in his letter to her of January 31st written on the back of the letter of Lazard Freres to him, was man-

ifestly carrying out the suggestions of that letter, and makes no allusion to the matter of redemption which complainant claims was communicated by the second letter spoken of by him. (6) Complainant's letter to Lazard Freres on the same day, referring to his letter to Mrs. Ord, makes no reference to a right of redemption. (7) The testimony given by complainant is inconsistent with his own letters, and with the averments of the bill, sworn to by him, as already pointed out. (8) The new matter claimed to have been embraced by the second letter spoken of is not shown to have been true, but the contrary.

In his testimony complainant details the agreement he claims to have had with David Cahn prior to the making of the deed of date February 24, 1881, respecting the property. The substance of the agreement as stated by him is that Mrs. Ord was to be induced to execute the deed conveying the property to Weill, instead of submitting to a foreclosure, thereby canceling her indebtedness and receiving in money the estimated cost of foreclosure, and Weill was to hold the title so conveyed for the benefit of complainant, who was to be "carried [by Lazard Freres] at a reduced rate of interest for a year or two," and allowed to redeem the property by paying the amount of the indebtedness existing at the time of the execution of the deed, with interest at a reduced rate, and costs subsequently incurred in caring for the property. If such an agreement had been in fact made, I am unable to understand by what legal process the property of Mrs. Ord could be thus vested in complainant. It is not pretended that up to the time of the execution of the deed of date February 24, 1881, complainant had any interest in any of the property in controversy, except the Todos Santos rancho, and that he had no interest of any nature in that rancho I think has already been shown. There is no rule of law of which I have any knowledge under which such an arrangement as is stated by complainant could be made to operate to vest Mrs. Ord's title in him. Besides, a party who comes into a court of equity must do so with clean hands. That, so far as Mrs. Ord is concerned, the deed of date February 24, 1881, was intended as an absolute conveyance of all her right, title, and interest in all of the property is undisputed, even by the complainant himself. Indeed, his case is based upon that theory; and yet, while acting as the trusted agent of that lady, who was his mother-in-law and an aged woman, he claims to have made such an arrangement with the manager of Lazard Freres as that he could thereby acquire her property, in four pieces, of which it is not pretended he then had any interest, by subsequently paying the amount of the indebtedness at a reduced rate of interest. Such an arrangement, if it had been made, would have been unconscionable in the extreme, and such as no court of equity ought to enforce in favor of the party making it. But the testimony of complainant in regard to the agreement is not only inconsistent with his letters, but it is positively denied by David Cahn, who explicitly states in his testimony that he never made any agreement with complainant by which he was to assume the indebtedness of Mrs. Ord and himself theretofore existing, or by which the deed in question was to be considered other than

what it purported to be, a deed absolute, or by which complainant was to be entitled to redeem the property under any circumstances or conditions; and complainant's testimony is, in many respects, also at variance with that of various other witnesses, and upon the vital points in the case is in itself highly improbable. The conduct of the parties subsequent to the execution of the deed of February 24, 1881, was not inconsistent with the absolute ownership of the property by Weill, who, as has been stated, stood in the place of Lazard Freres. There is no doubt that they preferred the money to the land, not only at the time they took the deed in question, but for many years after; and through David Cahn gave complainant the privilege of selling it, and retaining what he could get over and above what it had cost them, with interest and expenses. During all of this time the relations of the parties continued intimate, and complainant made every effort to sell the property, but without success. At times Lazard Freres were willing and anxious to take less than the property had cost them, with interest and expenses. In July, 1885, when the amount had reached over $31,000, David Cahn told complainant they would take $28,000; and in July, 1886, when the amount exceeded $35,000, he told him they would take $30,-000; but complainant was unable to effect sales. During this time, covering a period of over five years, many interviews occurred, and many letters passed between the parties. In this correspondence I have observed no letter from complainant in which he asserted or assumed that any of the property belonged to him. Only one letter during those years assumed the existence of an indebtedness from him to Lazard Freres. That letter was written on the 24th of July, 1885, more than four years after he claims to have assumed towards Lazard Freres, by a verbal agreement, the position of debtor. This letter requests Lazard Freres to send him "a memorandum of what I owe;" adding, "I will be entirely guided by what I owe," etc. This letter was answered by Altschul, one of the firm's accountants, in which it is said, "Your account will be sent shortly." Altschul testifies that he knew nothing about the understanding between David Cahn and complainant, and David Cahn testifies that he never saw the letter. The adoption by Altschul of the language of the letter he was answering, and using the term "your" instead of "the," should not, as justly observed by counsel, be accorded much significance. But this very letter of Altschul to complainant inclosed a copy of a letter written by Eugene Meyer, as attorney in fact for Weill, to a person who was supposed to be a tenant of Mrs. Hartnell, who had a life-estate in the Todos Santos rancho, proposing to rent the rancho to him, and complainant's attention is called by this letter to "the party now on Mr. Weill's property," and complainant is therein requested to "take no steps which will conflict with our direct instructions to that gentleman." In several letters from Lazard Freres to complainant they speak of the property as belonging to Weill or themselves. In a letter of October 11, 1881, after asking complainant's opinion as to "the lowest figures we should accept for the Todos Santos rancho," they say: "Let us see if they agree with ours, and if not we will have

to consult our friends at Santa Barbara, and accept what the ranch is worth." In one bearing date November 15, 1881, they mention certain persons who had applied to purchase "the Todos Santos rancho owned by us." In one to complainant, dated December 9, 1884, they refer to him a letter from Judge Fernald, proposing to fence the State-Street lot, and ask complainant's "opinion of this matter, as far as the fencing of Weill's property is concerned," and ask that he "excuse the trouble given." In a letter from complainant to Eugene Meyer, dated September 12, 1885, he sends a map of the Todos Santos rancho, and says: "I fervently hope that you will be able to effect an advantageous sale of the lands." In a letter of date December 1, 1885, he says, referring to the State-Street lot, "Although you do not say anything about the lot on State street, * * * if you do sell I hope you will receive a good round price for it." These letters are inconsistent with the contention of complainant in the present case, but they are consistent with what I think the case clearly shows throughout, that Lazard Freres were anxious to get the money they had invested in the property out of it, and that, because of their unfamiliarity with the land, and their friendly relations with complainant, which then continued to exist, and because of the privilege they had accorded him of selling the property in order that he might make something out of it if he could, they felt justified in asking him for his views in respect to it.

It is urged that the books of Lazard Freres show that the indebtedness continued to exist against complainant after the execution of the deed of February 24, 1881. At the time of the execution of that deed, and for more than a year before, the indebtedness of Mrs. Ord and of complainant was carried upon the books of the firm under the head "Ord-Kahn," as the most convenient method of keeping an account of the moneys loaned and advanced to those parties; but, manifestly, that circumstance did not change the character of the indebtedness, which was evidenced by the promissory notes of Mrs. Ord and complainant which Lazard Freres still held, to an open account against them. When the indebtedness was paid by the conveyance of the property by the deed of date February 24, 1881, all written evidence held by Lazard Freres against Mrs. Ord and complainant was canceled and surrendered to them, but the fact of the payment was not entered in the books under the account headed "Ord-Kahn." Whether or not correct book-keeping required such entry, or whether, as is claimed, the account was properly kept open as an account against the property, to show its cost, and in which to make future entries of costs and expenses paid on account of it, I do not know. But certain it is that the account headed "Ord-Kahn" was never, after the execution of the deed in question, regarded by any one connected with the management of the bank as an account against Mrs. Ord and complainant, or either of them, nor treated as such. No money was ever demanded or received of them, or either of them, thereon, nor could have been, for the simple reason that the indebtedness had been wiped out by the sale and conveyance of the property. Besides, some of the entries made in the account after the execution of

the deed exclude the idea that it was kept alive against Mrs. Ord and complainant, or either of them, but are consistent with the claim that it was continued as an account showing the cost to the bank of the property. Certain it is, also, that if the account showed an existing indebtedness against complainant, it showed precisely the same thing in respect to Mrs. Ord; and that would prove too much for complainant's case, which concedes that Mrs. Ord's indebtedness was paid by the conveyance in question and his assumption of the debt. It is incredible that any sane bankers would have allowed so large a debt to stand until it was barred over and over again by the statute of limitations, and that, too, without even ever demanding payment of interest or principal; and it is asking too much of a court to believe that the complainant ever understood that Lazard Freres would permit him to owe them so many thousand dollars without a scratch of his pen to show for it, and without ever calling upon him for interest or principal during all the years that have since elapsed. I think the case is without any merit on complainant's part, and, accordingly, there will be a decree dismissing the bill, and awarding cross-complainant the relief demanded in the cross-bill, with costs.